UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America,

Plaintiff,

v.

Starlit Zhao,

Defendant.

Case No. 16-cr-20575
Hon. Judith E. Levy
Mag. Judge David R. Grand

**GOVERNMENT'S SENTENCING MEMORANDUM**

Defendant Starlit Zhao stands convicted of one count of travel with intent to engage in illicit sexual activity, in violation of 18 U.S.C. § 2423(b). For the reasons stated in this memorandum, the government believes that a within-guidelines sentence of 135 months' imprisonment is "sufficient, but not greater than necessary," pursuant to the purposes of 18 U.S.C. § 3553(a).

## I. FACTS AND PROCEDURAL HISTORY

In the summer of 2015, a minor female living in the Eastern District of Michigan ("MV-1") began communicating over the internet with Starlit Zhao, who MV-1 knew as Jin Zhao. At the time, Zhao's primary

occupation was creating and maintaining Jin Bop Gaming, a company through which Zhao operated a YouTube channel in which he would record videos of himself playing video games, narrating alongside his play. Over the course of several months, MV-1 created graphics and voice-overs for Zhao so that he could use them in his videos.

Zhao's communication with MV-1 continued, and in February of 2016, MV-1's parents began to notice changes in MV-1 that concerned them. MV-1 began to wear a locket around her neck with a photograph of Zhao inside. MV-1 also asked her parents to purchase feminine clothes—including undergarments—that were not typical of her normal clothing choices. MV-1's parents noticed that she was not wearing the clothing out of the house, but instead, they would see it on her bedroom floor, near her computer desk. MV-1's parents grew increasingly concerned, and they began to monitor her computer activity. At the time, MV-1 was only 13 or 14 years old.

Through this monitoring, MV-1's parents heard an audio recording of one of MV-1's and Zhao's conversations. In the conversation, Zhao asked MV-1 to "strip" her clothes off, and gave MV-1 advice on grooming her genital area. In the same conversation, MV-1 told Zhao that she was

14 years old, and Zhao acknowledged her age. By March of 2016, Zhao began discussing with MV-1 the possibility of their meeting to have sex. Zhao asked MV-1 try convince her parents to take a family vacation to Florida, where Zhao would attend a gaming convention and the two could meet for sex.

In April of 2016, MV-1's parents grew concerned enough to contact the FBI about MV-1's communications with Zhao. On May 20, 2016, MV-1's parents captured a 37-minute Skype conversation in which MV-1 and Zhao discussed trying to convince MV-1's parents to allow MV-1 to travel to Seattle, Washington, so she could meet with Zhao. Zhao offered to rent a hotel during that visit. MV-1 and Zhao also discussed MV-1 performing oral sex on Zhao. MV-1 told Zhao that she had never done so, and asked Zhao how to perform oral sex. Zhao asked MV-1 if he would be her first sexual partner, and they discussed the fact that she was 14 years old.

During this same conversation, Zhao asked MV-1 to remove her clothing and expose herself. Initially, Zhao asked MV-1 if he could kiss her, and then specifically asked if he could kiss her between her legs, referring to her vagina. Zhao then said to MV-1, "You should take off

some clothes for me. What's behind your underwear? Can I give it a kiss?" MV-1, who was sitting in a chair with her knees pulled up to her chin and her feet on the chair, then moved her underwear to the side, exposing her vagina to Zhao.

Between May 20, 2016 and July 1, 2016, MV-1 and ZHAO continued to communicate with each other via Skype and text messages. On July 1, 2016, the two again discussed meeting in person. Since MV-1 had not traveled to Washington or Florida to visit Zhao, Zhao told MV-1 that he planned to travel to Detroit, Michigan so that he could meet MV-1.

On July 21, 2016, the FBI learned that Zhao had booked a flight from Seattle to Detroit for August 5, 2016. During a July 25, 2016 conversation, Zhao told MV-1, "You're going to give your first blow job in little over a week now. Think you're going to be much good at it?" During this conversation, MV-1 asked Zhao if he was in love with her. Zhao responded that he was not in love with her and did not have love on his mind. MV-1 said that Zhao would feel differently when he got to Michigan, and Zhao replied, "Maybe. Good sex will do that to me. Yeah, yeah, I'll treat you like my lover while I am there." Zhao then said that "maybe in four years," MV-1 could be his girlfriend. MV-1 asked why she

would have to wait so long, and Zhao corrected himself, saying, "three years," indicating that when MV-1 turned 18 in three years, she could be his girlfriend.

On August 5, Zhao flew from Seattle to Detroit. The FBI were waiting for him in Detroit, and arrested him after the plane landed. Zhao waived his Miranda rights and agreed to be interviewed by agents. Zhao admitted that he had traveled to Michigan to meet MV-1 and that he knew she was 15 years old. He also admitted that some of the conversations he had with MV-1 were sexual, and that he sometimes asked MV-1 to engage in sexual activities, including masturbation, during those conversations.

The same day, the FBI also interviewed Zhao's mother, Wen Xu, at her home in Bellevue, Washington. Xu told the agents that Zhao lived with Xu and her husband, Ming Zhao. She said that Starlit Zhao had told her that he was going to Detroit for business—to meet with Disney producers to talk about a show for the Disney Channel. He had also asked Xu to borrow her and her husband's video camera, explaining that he wanted to film his meeting with the producers to post to his YouTube

channel. Xu said that she was unable to find the camera, so Zhao did not take it to Detroit.

On August 23, 2016, Zhao was indicted on one count of production of child pornography, in violation of 18 U.S.C. §§ 2251(a), (e); one count of coercion and enticement of a minor, in violation of 18 U.S.C. § 2422(b); one count of travel with intent to engage in illicit sexual activity, in violation of 18 U.S.C. § 2423(b); and one count of receipt of child pornography, in violation of 18 U.S.C. § 2252A(a)(2). (ECF No. 13).

On April 17, 2017, Zhao pleaded guilty to the count of travel with intent to engage in illicit sexual activity. (ECF No. 26). In the Rule 11 plea agreement, the parties agreed that the appropriate sentencing guideline range was 135–168 months' imprisonment. (*Id.* at 3). The parties also agreed that the court must impose a sentence of at least 96 months' incarceration, or the government would be permitted to withdraw from the agreement. (*Id.* at 5, 9).

On June 16, 2017 probation officer Lee Sharp prepared a PSR for this case. His calculation of the sentencing guidelines was identical to the parties' calculations. (PSR, ¶ 55). Neither party objected to the PSR. Sentencing is scheduled for August 7, 2017.

## II. DISCUSSION: SECTION 3553(A) FACTORS

The Supreme Court has noted that, in formulating the Sentencing Guidelines, the U.S. Sentencing Commission's goal is to carry out the objectives of 18 U.S.C. § 3553(a). *United States v. Rita*, 551 U.S. 338 (2007). While advisory, the Guidelines remain an important factor in fashioning a just sentence. This is because "it is fair to assume that the Guidelines, insofar as practicable, reflect a rough approximation of sentences that might achieve section 3553(a)'s objectives." *Id.* at 350. Moreover, the guidelines "should be the starting point and the initial benchmark" for choosing a defendant's sentence. *Gall v. United States*, 552 U.S. 38, 49 (2007).

### A. The nature and circumstances of the offense (§ 3553(a)(1))

From the government's perspective, the nature and circumstances of the offense is the most important factor to consider in this difficult case. Zhao's conduct was extensive and planned. Over the course of a year, Zhao communicated regularly with MV-1, progressing those communications from shared interests into sexual conduct that Zhao himself initiated. This was not a single, poor decision, but a lengthy course of conduct that involved taking advantage of a vulnerable victim.

Zhao was also clearly aware of the nature of what he was doing—he acknowledged MV-1's age on multiple occasions. And, based on his comments to MV-1 that they could be in a relationship "maybe in four years," he appeared to understand that he could not have ongoing sexual conduct with MV-1 while she was a minor.

The seriousness of Zhao's conduct is further exacerbated by the fact that MV-1 was only 14 years old during much of Zhao's contact with her, and only 15 at the time of the offense of conviction. The guidelines specifically recognize the vulnerability of younger minors, providing for a two-point guideline enhancement where the victim is at least 12 but not yet 16. U.S.S.G. § 2G2.1(a)(1)(A). MV-1's vulnerability, and Zhao's capitalization of that vulnerability, is made clear by the facts of the case: when MV-1 asked Zhao if he loved her, he said that love was not on his mind, but "good sex" might be able to change his feelings, and that he would "treat [MV-1] like [his] lover while [he was] there." The guidelines for this offense are high for a reason: victims of MV-1's age are vulnerable to being taken advantage of in a devastating way.

Further, the plea agreement in this case was a very good deal for Zhao—had he been convicted of the production of child pornography

charge (Count 1 of the Indictment), he would be facing a 15-year mandatory minimum. *See* 18 U.S.C. § 2251(e). Likewise, had he been convicted of the enticement charge (Count 2 of the Indictment), he would be facing a 10-year mandatory minimum. *See* 18 U.S.C. § 2422(b). The guideline range here reflects the severity of the offense conduct.

**B. The history and characteristics of the defendant (§ 3553(a)(1))**

Zhao is healthy, intelligent, and bears no childhood trauma. He has no criminal history, which should rightly be considered in sentencing, but is already taken into account in calculating his guideline range. In assessing the entire history and characteristics of this defendant, there is nothing that would warrant movement from the guidelines in either direction.

**C. Seriousness of the offense, promotion of respect for the law, and just punishment for the offense (§ 3553(a)(2)(A))**

Zhao's conduct involves harm to both MV-1 and her family. The emotional damage done to MV-1 is difficult to quantify, but it is likely that this is an experience that she will carry with her for the rest of her life. Unquestionably, the offense is serious. MV-1's parents have also had to go through the experience of witnessing Zhao's exploitation of

MV-1, and undoubtedly had to agonize over the safest and most appropriate way to handle the situation. Because of the severity of the offense, the just punishment is also severe.

### D. Adequate deterrence and protection of the public (§ 3553(a)(2)(B), (C))

In cases such as this one—where victims are directly and severely affected—deterrence should be a paramount consideration. While the evaluation of Zhao described in the PSR asserts that he is a low risk recidivism, (PSR, ¶ 41), the court must also consider general deterrence to limit risk to the public of future similar offenses by other offenders. This particular offense is very difficult to detect, as can be seen by the facts of this case. Had MV-1's parent not taken specific note of her unusual behavior, the conduct could have gone on entirely unnoticed. Where offenses are difficult to detect, more severe punishment is necessary to aid in deterring offenders. *See, e.g.*, *United States v. McElheney*, 524 F. Supp. 2d 983, 1006 (E.D. Tenn. 2007).

## III. CONCLUSION

There can be no dispute that this offense was serious—Zhao engaged in an ongoing, sexual internet relationship with a girl at the vulnerable age of 14 years, and traveled to her home state with the intent to have sex with her. Such conduct, on its own, warrants a significant custodial sentence, as reflected by the high base offense level for it. The government does recognize that Zhao has no prior criminal history and has long-term potential to be a contributing member of society, and agrees that this should also be considered in reaching a just sentence. Accordingly, the government recommends a custodial sentence of 135 months—the bottom of the guideline range.

Respectfully submitted,

DANIEL L. LEMISCH
Acting United States Attorney

*s/John B. Meixner Jr.*

John B. Meixner Jr.
Assistant United States Attorney
211 W. Fort St., Suite 2001
Detroit, MI 48226
(313) 226-9626
john.meixner@usdoj.gov
P80309

Dated: July 31, 2017

# CERTIFICATE OF SERVICE

I certify that on July 31, 2017, I electronically filed the foregoing document with the Clerk of the Court of the Eastern District of Michigan using the ECF system, which will send notification of such filing to the following:

Raymond A. Cassar
Attorney for the Defendant

*s/John B. Meixner Jr.*
John B. Meixner Jr.
Assistant United States Attorney
211 W. Fort St., Suite 2001
Detroit, MI 48226
(313) 226-9626
john.meixner@usdoj.gov